**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMIE ROSAS,<br><br>        Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. 5:17-CV-02220-AS<br><br>**MEMORANDUM OPINION** |

**PROCEEDINGS**

On October 31, 2017 Plaintiff filed a Complaint seeking review of the Commissioner's denial of Plaintiff's application for a period of disability, and disability insurance benefits ("DIB"). (Docket Entry No. 1). On March 27, 2018, Defendant filed an Answer and the Administrative Record ("A.R."). (Docket Entry Nos. 20-21). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 15, 17). On June 6, 2018, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective

positions regarding Plaintiff's claim. (Docket Entry No. 22). The Court has taken this matter under submission without oral argument. See C.D. Local R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On April 10, 2014, Plaintiff, formerly employed as a cleaner and a bench carpenter (see AR 39, 47-51, 254-55), filed an application for Disability Insurance Benefits ("DIB"), alleging a disability onset date of May 14, 2013. (AR 218-19, 238). The Commissioner denied Plaintiff's application initially on August 18, 2014 (AR 96-100), and on reconsideration on March 13, 2015. (AR 104-110).

On October 27, 2016, Administrative Law Judge Alan J. Markiewicz ("ALJ") heard testimony from Plaintiff, who was represented by counsel, and vocational expert ("VE") Alan Ey. (AR 42-66). On January 13, 2017, the ALJ issued a decision denying Plaintiff's application. (AR 23-40).

The ALJ applied the requisite five-step process to evaluate Plaintiff's case. At step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2017, and had not been engaged in substantial gainful activity since his alleged disability onset date of May 14, 2013. (AR 31).

At step two, the ALJ found that Plaintiff had the following severe impairments: disc disease of the lumbar spine, diabetes, and obesity. (AR 31). The ALJ found that Plaintiff's complaints

2

of hypertension, cervical spine disc disease, diabetic retinopathy, and depression were not severe. (AR 32).

At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a listing found in 20 C.F.R Part 404, Subpart P, Appendix 1. (AR 33). Next, the ALJ found that Plaintiff had the following Residual Functional Capacity ("RFC")[1]:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) as follows: can lift and carry 50 pounds occasionally and 25 pounds frequently; can stand and walk for 6 hours in an 8-hour workday; can sit for 6 hours in an 8-hour workday; cannot climb ladders, ropes, or scaffolds; can frequently climb ramps and stairs; and should avoid concentrated exposure to extreme cold, extreme heat, wetness, vibration, and hazards.

(AR 34).

At step four, the ALJ determined, based on the VE's testimony, that Plaintiff is capable of performing past relevant work as a commercial cleaner. (AR 38). In making this finding, the ALJ specifically noted that "this work does not require the performance of work-related activities precluded by the [Plaintiff's] residual functional capacity." (AR 38).

---

[1] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R §§ 404.1545(a)(1), 416.945(a)(1).

3

Accordingly, the ALJ concluded that Plaintiff is not disabled. (AR 40).

The Appeals Council denied Plaintiff's request to review the ALJ's decision on September 27, 2017. (AR 1-9). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTION**

Plaintiff alleges that the ALJ failed to articulate sufficient reasons in rejecting the opinion of one of Plaintiff's examining physicians. (See Joint Stip. at 4-10).

**DISCUSSION**

After considering of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material legal error.[2]

**A. The ALJ Did Not Err In Discounting The Opinions Of Dr. Steiger**

An ALJ must take into account all medical opinions of record. 20 C.F.R. § 404.1527(b). Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing

---

[2] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The weight given an examining physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things. See 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

If a treating or examining doctor's opinion is not contradicted by another doctor, the ALJ can reject the opinion only for "clear and convincing reasons." Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); Lester v. Chater, 81 F.3d at 830-31. "If the opinion of an examining physician is contradicted by the opinion of another doctor, it may nevertheless be rejected only for 'specific and legitimate reasons that are supported by substantial evidence in the record'." Buck v. Berryhill, 869 F.3d 1040, 1049-50 (9th Cir. 2017)(citing Lester v. Chater, 81 F.3d at 830-31). While the ALJ's rejection of an examining physician may be based in "*in part* on the testimony of a nontreating, nonexamining medical advisor . . . . [o]pinions of a nonexamining, testifying medical advisor" may constitute the required substantial evidence "when they are supported by other evidence in the record and are consistent with it." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600-03. (9th Cir. 1999) (citing Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

Plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of one of Plaintiff's examining physicians, Dr. Steiger, (see Joint Stip.

6

at 4-10), and claims that the ALJ rejected Dr. Steiger's opinion solely because it was provided in the context of a worker's compensation claim. (See Joint Stip. at 8). Plaintiff further contends that the ALJ's decision is "baron [sic] of any reason for rejecting Dr. Steiger's opinion." (See Joint Stip. at 8). The Court disagrees.

Dr. Steiger, a Qualified Medical Examiner[3], conducted a qualified medical evaluation in orthopedics, in connection with Plaintiff's worker's compensation claim in June 2014 and examined Plaintiff during a required follow-up visit in September 2014. (AR 1137-45, 1148-60). Dr. Steiger opined that Plaintiff "had reached MMI[4], and had permanent restrictions of no heavy lifting, repeated bending or stooping, repetitive twisting, or prolonged sitting," (AR 35, 1155, 1157), and found Plaintiff to be a qualified injured worker unable to return to his previous occupation. (AR 1158). Dr. Steiger gave the following reasons for his opinion: "history obtained from patient, subjective complaints, objective findings, diagnostic studies cited . . . and review of available medical records." (AR 1158-59).

The ALJ noted that Plaintiff had filed a worker's compensation claim following his work-related injury on May 14,

---

[3] "Qualified medical evaluators (QMEs) . . . examine injured workers to determine the benefits they will receive if there is a disagreement over the treating physician's opinions." (See Joint Stip. at 6).

[4] "Maximum Medical Improvement." (AR 1155).

7

2013 and had been treated by a variety of medical providers including chiropractors, general physicians, an orthopedic surgeon and pain management specialists. (AR 35). The ALJ found the workers' compensation progress reports which placed Plaintiff on temporary total disability (AR 340-343, 349, 411) to have "no probative value" and not entitled to controlling weight (AR 35-36), noting that "medical reports generated in the context of a worker's compensation claim are adversarial in nature," the treating physician often serves as an advocate for the plaintiff and the definition of disability in worker's compensation cases differs from social security claims because worker's compensation cases focus on the claimant's ability to return to the job being performed at the time of the injury. (AR 36). The ALJ carefully assessed the persuasiveness and relevance of the opinions generated by the providers in plaintiff's worker's compensation claim and determined that their clinical findings and opinions regarding plaintiff's functional limitations were entitled to "little weight." Id. The ALJ was entitled to do so.

Plaintiff contends that the ALJ's rejection of Dr. Steiger's opinion because it was provided in the context of a worker's compensation claim is improper. However, the regulations provide that "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has . . . are relevant factors that we will consider in deciding the weight to give to a medical opinion." 20 C.F.R. § 404.1527(c)(6). Although an ALJ is not permitted to disregard a physician's opinion solely because it

was generated in a worker's compensation matter, (see Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105-06 (C.D. Cal. 2002); see also Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995) (as amended) ("The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them."), an ALJ must evaluate such opinions "just as he or she would evaluate any other medical opinion," and "must 'translate' terms of art contained in such medical opinions into the corresponding Social Security terminology in order to accurately assess the implications of those opinions for the Social Security disability determination." Booth, 181 F. Supp. 2d at 1106 (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988)). "While the ALJ's decision need not contain an explicit 'translation,' it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence." Id.

Contrary to Plaintiff's contention, the ALJ did not reject Dr. Steiger's opinion solely because it was made in connection with Plaintiff's worker's compensation case. The ALJ conducted a detailed examination of the record, (AR 35-38), and found that Dr. Steiger's examining opinion was contradicted by two other doctors, as well as the "objective evidence as a whole." (AR 35-36). Although the rejection of the opinion of an examining or treating doctor cannot be supported by the opinion of a non-examining doctor, the report of a non-examining doctor, combined

with inconsistencies in the record can constitute substantial evidence to support the rejection of an examining doctor's opinion. Morgan, 169 F.3d at 602-03.

Here, the ALJ gave significant weight to the opinions of both Dr. Bernabe, another examining physician, and Dr. Kalmar, the nonexamining State agency medical consultant, finding their opinions regarding Plaintiff's "residual functional capacity [to be] an apt reflection of the [Plaintiff's] physical limitations" based on the record as a whole. (AR 36). As set forth below, the record supports the ALJ's finding.

Dr. Bernabe, an examining physician, performed a "consultative orthopedic evaluation" of Plaintiff in July 2014, (AR 36, 584), and concluded "based both on formal testing, as well as by direct observation of this claimant," that Plaintiff "was limited to medium exertion, frequent postural activities and frequent activities requiring agility." (AR 36, 587-88). Dr. Bernabe stated:

> "[Plaintiff] is able to lift and carry 50 pounds occasionally and 25 pounds frequently . . . [Plaintiff] is able to push and pull without limitations . . . [Plaintiff] is able to walk and stand six hours out of an eight-hour work day . . . [Plaintiff] is able to walk on uneven terrain, climb ladders, and work at heights frequently . . . [Plaintiff] is able to sit six hours out of an eight-hour work day . . . There are no limitations for

>     fingering, handling, feeling, and reaching . . .
>     [Plaintiff] is able to bend, crouch, stoop, and crawl
>     frequently . . . ."

(AR 587-88).

Dr. Kalmar, the State agency medical consultant, reviewed Plaintiff's medical record and "concluded the [Plaintiff] was capable of medium exertion with the following limitations":

> Can lift 50 pounds occasionally, 25 pounds frequently;
> can stand for about 6 hours in an 8-hour work day, can
> sit for about 6 hours in an 8-hour work day; has no
> limitations on pushing or pulling; cannot climb
> ladders, ropes, or scaffolds; can frequently climb
> ramps and stairs; can stoop, kneel, crouch, crawl, and
> balance frequently; should avoid concentrated exposure
> to extreme cold, extreme heat, wetness, vibration, and
> hazards.

(AR 36, 75-76).

In finding Dr. Steiger's opinion inconsistent with the medical record as a whole, the ALJ also considered part of the Third Party Function Report completed by Plaintiff's wife (AR 35-37, 245-53), as well as Plaintiff's own testimony.[5] (AR 38, 42-66). The ALJ gave "significant weight" to the statements made by Plaintiff's wife that Plaintiff "has no problem with personal care . . . goes for a walk for one hour everyday . . . prepares

---

[5] Plaintiff does not challenge the ALJ's adverse credibility determination. See Joint Stip. at 4-10, AR 38).

his own meals daily, and folds laundry; he goes out alone, drives a vehicle . . . and goes shopping in stores." (AR 37, 245-53). These statements directly contradict Dr. Steiger's findings that "[plaintiff] is permanent and stationary," and his opinion that Plaintiff's restrictions of "no heavy lifting or repeated bending or stooping; no repetitive twisting; and no prolonged sitting . . ." rendered Plaintiff unable to return to his prior work. (AR 1155, 1157).

The ALJ also pointed out that Dr. Steiger's opinion was contradicted by Plaintiff's own statements. (AR 38). The ALJ noted that Plaintiff "provided inconsistent information regarding . . . the determination of disability . . ." and therefore found "the persuasiveness of the claimant's complaints and alleged functional limitations" to be "further diminished as a result." (AR 38). Specifically, the ALJ noted that Plaintiff reported that he was not able to drive himself, yet testified that he drove himself to a doctor's appointment and drove himself to the hearing. (AR 38, 46, 572, 585). The ALJ also cited Plaintiff's May 2014 function report, in which Plaintiff stated that he "drives, goes out alone, [and] shops in stores. . . ." (AR 38, 266-74). The ALJ found that Plaintiff's treatment history suggested that the treatment of his "allegedly disabling symptoms" has been "generally successful in controlling those symptoms . . . . [and] [Plaintiff] reported feeling much improved overall with treatment." (AR 38, 527-43[6], 544-70[7], 577-83[8], 760-

---

[6] Medical Evidence of Record, dated 12/11/2013 to 04/24/2014, from Jimmie Kang.

12

72[9], 820-23[10]). Despite alleging "debilitating pain and mental conditions since May 14, 2013," the ALJ noted that Plaintiff had previously "denied any prior pain or problem with his neck or upper back" and also denied "any musculoskeletal or psychiatric complaints" to several providers. (Id.).

The ALJ's finding that Dr. Steiger's opinion was inconsistent with the record as a whole and inconsistent with the statements of Plaintiff and his wife are supported by the record. (AR 36-38). Accordingly, the ALJ properly rejected Dr. Steiger's opinions by articulating specific and legitimate reasons that are supported by substantial evidence in the record.

//
//
//

---

[7] Medical Evidence of Record, dated 04/14/2014 to 04/28/2014, from Retina Institute of California.

[8] Medical Evidence of Record, dated 06/04/2013 to 07/11/2014, from Robert A. Innocenzi, D.O.

[9] Medical Evidence of Record, dated 07/11/2014 to 01/14/2015, from Robert A. Innocenzi, D.O.

[10] Progress Notes, dated 11/02/2015, from Robert A. Innocenzi, D.O.

13

**CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 11, 2018


_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE